Ellen V. Murphy

*vs.*

Federal Land Bank of Springfield et al.

Aroostook.      Opinion, February 7, 1940.

*Albert F. Cook,*
*Herschel Shaw,* for plaintiff.
*William H. Adams,*
*Pendleton & Rogers,*
*M. P. Roberts,* for defendants.

Sitting: Dunn, C. J., Sturgis, Thaxter, Hudson, Manser, JJ.

Manser, J.   This case comes up on appeal from a decree in equity dismissing the plaintiff's bill. The Federal Land Bank of Springfield obtained title to a 300-acre farm in Aroostook County by foreclosure of mortgages which it held. Hugh A. Murphy was the mortgagor. He had lived on the farm all his life, having become the owner by inheritance. It was a potato farm, and probably due to adverse conditions, Mr. Murphy had been unsuccessful and

finally lost his equity. He and his wife, the present plaintiff, were desirous of purchasing and again becoming owners of the farm when and if they became financially able to do so. The officers of the defendant bank were sympathetic in this respect and were willing to afford reasonable opportunity to effect such a purchase. When the foreclosure expired May 8, 1936, Murphy executed a crop mortgage to the bank which included in its provisions an acknowledgment that the premises had been rented to him by the bank for a period ending April 1, 1937, at a rental of $2600. On August 28 of the same year, the local representative of the bank prepared a contract of sale between the bank and the plaintiff, which provided that she was to purchase the premises for $21,000, of which sum $5000 was to be paid January 15, 1937, and $5000 March 15, 1937, when a deed would be given and a mortgage taken for the remainder of the purchase price. This contract was submitted to the bank officials in Springfield and its terms approved, subject, however, to the payment of the first installment of $5000. No delivery of the contract was authorized until such payment. No payment whatever was made, the contract of sale was not delivered, and never became effective. The following year on June 10, 1937, the rental arrangement with Hugh Murphy having terminated, a lease was made to the plaintiff, to expire March 1, 1938, at a rental of $2000. On May 7, 1938, another lease was executed between the same parties, ending March 1, 1939, and at the same rental. In both of the leases to the plaintiff there was a provision reserving the right to the lessor to sell the premises to another, in which event the lease terminated.

On December 27, 1938, the bank made a contract for sale to Peterson and Burke, who were made parties defendant to the plaintiff's bill. Under this contract, the prospective purchasers were to pay $21,000 upon terms which included the payment of $1000 in cash and $4000 not later than February 1, 1939.

The plaintiff alleges that the bank entered into a contract with her under its lease of June 10, 1937, giving her the right to purchase the premises the following spring upon the terms and conditions which were set out in the proposed contract of August 28, 1936; that the plaintiff, being unable to purchase the property in the spring of 1938, the bank again leased the premises to her and made the same agreement with reference to the right to purchase the

premises in the spring of 1939; further, alleges the plaintiff, the bank agreed with her that if, during the term of the lease dated May 7, 1938, it should receive an acceptable offer of purchase of the premises from any other person, the plaintiff should have the option to meet such offer within ten days after written notice was mailed to the plaintiff by the bank.

There are no allegations in the bill as to whether these agreements were made orally or in writing, but there are further averments that the plaintiff, relying upon her right to purchase, expended large sums of money and furnished labor in the betterment of the premises.

The plaintiff then alleges that the contract of sale with Peterson and Burke was a violation of the rights of the plaintiff; that she was not informed of the negotiations, but upon learning thereof, offered to meet the terms of the Peterson and Burke proposal.

The plaintiff sought through the prayers in her bill to have specific performance decreed of the alleged contract of sale to her.

Many legal issues are raised by the parties but it appears that none are necessary of decision. The presiding Justice made no findings or rulings except the final decree that, "The bill is found to be without merit." There was ample justification for such decree upon the facts disclosed by the record. The proposed contract of sale of August 28, 1936, by the frank admission of the plaintiff, never became operative or effectual. The lease to her of June 10, 1937, contains no provision for an option to purchase. On the back of this lease are printed questions to be answered by the lessee to aid the bank in its decision as to approval of the lease. One of the questions is : "Why are you leasing this farm?" The answer given is : "She hopes she will be able to buy." In the lease of May 7, 1938, appears the same question with the answer : "Wants chance to buy if financially able next spring." Mr. Murphy testified that, as to the 1937 lease, the local representative asked these questions and that the answers were given by him and written in by the representative, and that Mrs. Murphy was present. Again, as to the 1938 lease, Mr. Murphy says that he gave the answer which was written in to the same question.

The plaintiff testified that, as to the 1937 lease she understood she was to have an option to buy in the spring of 1938 if financially able. No negotiations for purchase were initiated by her. As to the 1938

lease, she was asked: "Do you recall the spring of 1938, the time you were there with your husband and Mr. Glew; whether or not there was anything said with reference to a contract to buy the property back next spring?" Answer: "No, I can't say I do." Incidentally, it appears that the 1937 rental was not paid in full and nothing was paid on the 1938 rental.

It is true that the local agents of the bank acknowledge that they suggested to Mr. Murphy at different times that he should get busy if he desired to purchase the property, but denied ever having entered into any oral agreement with either Mr. or Mrs. Murphy whereby either of them would have a right to purchase the farm.

Referring to the evidence as to substantial improvements, the period must in any event be limited to occupancy subsequent to the execution of the 1938 lease. The plaintiff did not exercise any claimed option under preceding arrangements. There being no provision for option in the 1938 lease, she asserts that such a right was granted orally. To avoid the effect of the statute of frauds, she asserts sufficient part performance by expenditures of value upon the farm. Assuming an oral agreement, with consideration, examination of the record discloses that in the summer of 1938, sixty rods of fencing were removed at an expense of $25, thus clearing some land for the purpose of planting potatoes. This slight and insignificant expenditure, incidental to the beneficial use of the premises by the tenant of a farm worth $21,000, could not support a finding of substantial improvements made in reliance upon an oral agreement as to the purchase of the property. It is also urged by the plaintiff that the defendant bank recognized the right to purchase on the part of Mrs. Murphy after it had entered into the contract of sale with Peterson and Burke, and that this appears from telegraphic communications between the parties. Instead, it is clear that when Mr. Murphy learned of the Peterson and Burke transaction, he caused a telegram to be sent, asking whether the bank would be willing to give him an opportunity to purchase the farm "providing signers of present contract keep offer open." On December 31, 1938, the bank replied by telegram, stating that if the signers of the contract kept their offer open, the bank was "willing to entertain from Murphy the best *cash* offer he cares to make between now and noon of January 7, 1939." Mr. Murphy then caused another tele-

gram to be sent, offering the same total price but installment payments of a much lesser amount and stating that, if given 30 days extension, he had good prospects of increasing the amount of the down payment. The bank replied, declining to make any extension but expressing willingness to entertain a cash offer if made without delay. On January 9, after the time limit set by the bank had expired, a telegram was sent, stating that the bank had accepted the Peterson and Burke offer. This falls far short of a recognition of a binding contract between the bank and the plaintiff, and is indicative only of a willingness to afford her an opportunity to purchase, provided it did not jeopardize the prospective sale to Peterson and Burke.

The presiding Justice was entirely justified from the record in reaching the conclusion that there was never any existing contract, either written or oral, between the defendant bank and the plaintiff for the sale of the property to her ; that there was no fraud or mistake in the legal meaning of those terms, and that the bank was under no obligation to convey the premises to her.

*Appeal dismissed.*
*Decree below affirmed.*

(DUNN, C. J., having deceased, did not join in this opinion.)